UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| ROGER A. SEVIGNY, in his official capacity as INSURANCE COMMISSIONER OF THE STATE OF NEW HAMPSHIRE, as LIQUIDATOR OF THE HOME INSURANCE COMPANY, <br><br> New Hampshire Insurance Department <br> 21 South Fruit Street <br> Concord, NH 03301 <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA and ERIC H. HOLDER, JR., in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES, <br><br> United States Department of Justice <br> 950 Pennsylvania Avenue, N.W. <br> Washington, DC 20530-0001 <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No.: |

## COMPLAINT

1.      This is an action by plaintiff Roger A. Sevigny, Insurance Commissioner of the

State of New Hampshire, in his capacity as Liquidator (the "Liquidator") of The Home Insurance

Company ("Home"), seeking a declaration that his making a court-approved interim distribution

of assets from the estate of Home to creditors in accordance with the New Hampshire Insurers

Rehabilitation and Liquidation Act, N.H. RSA 402-C, does not violate federal law and expose

the Liquidator to potential personal liability under 31 U.S.C. § 3713 (the "Priority Statute").

There exists an actual controversy over this claim because (1) the Liquidator has received

approval from the state court supervising the liquidation of Home to pay an interim distribution of 15% on allowed Priority Class II claims from the assets of the estate; (2) the United States has maintained that under the Priority Statute a representative such as the Liquidator may be personally liable for the payment of unpaid federal claims if he distributes assets on other claims; (3) the Liquidator has addressed or reserved assets in the full amount of the claims of the United States identified in proofs of claim filed by the United States or otherwise known to the Liquidator; (4) the Liquidator has conservatively reserved assets to permit an equivalent distribution on undetermined and unknown claims, including unknown claims of the United States, in determining to make the 15% interim distribution; (5) for over sixteen months, the United States Department of Justice has not acted on the Liquidator's request for a waiver of claims under the Priority Statute as to that interim distribution so as to permit the distribution to be made.  Without resolution of the issues presented by the position of the United States, the Liquidator is unable – over ten years after Home was ordered liquidated – to distribute assets to policyholders and others holding policy-level priority claims even though all known federal claims have been provided for and a conservative reserve for unknown claims established.

**Jurisdiction and Venue**

2.      This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because it arises under 31 U.S.C. § 3713.  The United States has waived its immunity from this suit by 5 U.S.C. § 702, in that this is an action for non-monetary specific relief concerning a federal agency's action or failure to act which has substantially impaired the Liquidator's ability to discharge his obligations under New Hampshire law.  Even if the United States had not waived its immunity from suit by 5 U.S.C. § 702, this suit is not barred by sovereign immunity because it is one against a federal official claiming that he (the Attorney General) has acted beyond his

2

statutory authority.  See *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949).

3.      Declaratory relief is proper under 28 U.S.C. § 2201 because – as more fully set forth below – there is an actual controversy between the parties concerning the interpretation and application of federal law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the property that is the subject of this action (the Home estate) is situated in this district and the plaintiff resides in this district.

**Parties**

5.      On March 4, 2003, Paula T. Rogers, then Insurance Commissioner of the State of New Hampshire, filed a proceeding entitled *In the Matter of the Rehabilitation of The Home Insurance Company*, Superior Court for Merrimack County, New Hampshire Docket No. 03-E-0106.  The Superior Court for Merrimack County, New Hampshire (the "Supervising Court") entered an Order of Rehabilitation on March 5, 2003.  On June 13, 2003, the Supervising Court entered an Order of Liquidation (the "Order of Liquidation").  The Order of Liquidation declared that The Home Insurance Company, an insurance company organized and existing under the laws of the State of New Hampshire, was insolvent and appointed the then Insurance Commissioner and her successors in office as its Liquidator.  The proceeding before the Supervising Court is now accordingly *In the Matter of the Liquidation of The Home Insurance Company*, Docket No. 03-E-0106 (the "Liquidation Proceeding").

6.      Plaintiff Roger A. Sevigny is the present Insurance Commissioner for the State of New Hampshire, with his principal place of business at the New Hampshire Insurance Department, 21 South Fruit Street, Concord, New Hampshire.  In that capacity, he is the present Liquidator of Home.

7.      The Home Insurance Company, in Liquidation, has an office at 55 South Commercial Street, Manchester, New Hampshire.

8.      Defendants are the United States of America and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States of America, appointed under 28 U.S.C. § 503.

## The New Hampshire Insurer Liquidation Proceeding

9.      The Liquidator has exclusive authority under the Order of Liquidation to recover all assets of Home and, subject to the oversight of the Supervising Court, to take such further actions as he deems necessary or expedient to further the purposes of the Order of Liquidation. N.H. RSA 402-C:21, :25.  As New Hampshire is Home's domiciliary state, the Liquidator is Home's domiciliary liquidator and the New Hampshire liquidation is the proper forum for all claims against Home.  See N.H. RSA 402-C:57.

10.     Home and its subsidiaries (most of which were merged into Home in 1995) wrote property and casualty lines of insurance for both commercial and personal lines policyholders, as well as reinsurance.  Home and its subsidiaries wrote insurance and reinsurance in all states and some territories of the United States, as well as in Canada, the United Kingdom, Bermuda and Hong Kong.  Home and its subsidiaries generally stopped writing personal lines business in the early 1990s, and they stopped writing all business in 1995 (subject to certain personal lines mandatory renewal requirements for 1996).

11.     New Hampshire law requires the Supervising Court to fix a deadline for the filing of claims.  N.H. RSA 402-C:37.  The Order of Liquidation established a deadline of June 13, 2004 for the filing of claims with the Liquidator.  As described below, the United States submitted seven proofs of claim before and after that date, most recently in 2005.

12.     As a result of the entry of the Order of Liquidation, many claims under Home's policies of insurance were transferred to the various insurance guaranty associations established by state law.  *E.g.*, N.H. RSA 404-B.  New Hampshire law requires a liquidator to apply for approval of a plan to distribute assets to insurance guaranty associations.  N.H. RSA 402-C:29, III.  On October 22, 2003, the Supervising Court entered an Order Approving Early Access Distribution Plan.  The early access distributions are subject to "claw back" agreements required by N.H. RSA 402-C:29, III, under which the guaranty associations will return early access distributions if necessary to pay claims of claimants with claims in the same or higher priority. Pursuant to the early access distribution plan and subsequent orders, nine distributions totaling approximately $238 million have been made to eligible insurance guaranty associations in partial reimbursement of their claims against the Home estate.  Certain states have withdrawn deposits made by Home totaling approximately $52 million, and the Liquidator is setting off deposit amounts against claims of guaranty associations in those states.

13.     The Supervising Court's orders approving the first six early access distributions provided that the distributions are subject to receipt of a waiver of federal priority claims under the Priority Statute from the United States in a form acceptable to the Liquidator.  On request by the Liquidator, the United States provided limited releases of claims under the Priority Statute with respect to the first six early access distributions.  The United States was not willing to provide waivers for the later early access distributions.  In light of the statutory claw back agreement with the guaranty associations, the Liquidator sought approval to make the seventh through ninth early access distributions without a waiver from the United States.

14.     New Hampshire law specifies the order in which the assets of an insolvent insurer are to be distributed.  N.H. RSA 402-C:44.  The statute divides the insurer's creditors into ten

successive priority classes, each of which will receive a distribution only after all creditors in prior classes have been paid in full or adequate funds retained for payment.  The first five classes are: (I) administration costs; (II) claims under insurance policies, including claims of insurance guaranty associations; (III) claims of the federal government other than those in higher priority classes; (IV) wages; and (V) residual claims, including claims of state or local governments.  N.H. RSA 402-C:44, I-V.

### The 15% Interim Distribution

15.     New Hampshire law provides for interim distributions to creditors.  N.H. RSA 402-C:46.  Under the direction of the Supervising Court, the Liquidator is to pay dividends in a manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims.  N.H. RSA 402-C:46, I.

16.     On February 11, 2012, the Liquidator filed a Motion for Approval of Interim Distribution to Claimants with Allowed Class II Claims with the Supervising Court.  The motion requested approval of an interim distribution of 15% on Class II claims allowed by the Supervising Court based on the presently available assets, the projected Class I expenses of liquidation, and the unpaid Class II liabilities as estimated by the Liquidator's independent actuarial consultant.  A copy of the motion is attached as Exhibit A.

17.     As set forth in the motion, the available Home assets as of December 31, 2011 totaled $1.382 billion, consisting of $1.115 billion of unrestricted liquid assets held by the Liquidator, $215 million in early access distributions previously paid to guaranty associations subject to statutory claw back, and $52 million in deposits withdrawn by the states.  These amounts are available to the Liquidator for potential distribution to claimants or to be applied by the Liquidator against claims.  The Liquidator did not consider it reasonable and prudent at that

time to base a distribution on future reinsurance collections or future investment income, and he did not consider such future assets in connection with the interim distribution.

18.     As set forth in the motion, the Liquidator estimated that Class I costs, including the expenses of the Home liquidation and the guaranty associations' claim overhead expenses, will total approximately $324 million over the remaining life of the Home estate.

19.     As set forth in the motion, to comply with New Hampshire law and assure equal treatment for all Class II claimants, any distribution must provide for all Class II obligations of Home even though they have not yet been determined.  To estimate these liabilities, the Liquidator engaged the internationally-known actuarial consulting firm Milliman, Inc. ("Milliman"), to estimate Home's unpaid policy-related obligations.  Milliman provided the Liquidator with its "actuarial Central Estimate" of Home's unpaid Class II liabilities, which was $4.112 billion.  It also provided a confidence level table that estimated Home's unpaid Class II liabilities at higher confidence levels.  This reflected the possibility that Home's unpaid Class II liabilities may exceed the actuarial Central Estimate.  The Liquidator determined to use the estimate of Home's Class II liabilities at the 95% confidence level for purposes of the interim distribution as this encompasses a reasonable and prudent percentage of potential outcomes.  At the 95% confidence level, the estimate of Home's unpaid Class II liabilities was $6.584 billion.

20.     As set forth in the motion, the Liquidator determined to seek approval of an interim distribution of 15%.  This percentage reflected the available assets (minus projected expenses) compared with the conservatively estimated ultimate Class II liabilities of Home.  The available assets ($1.382 billion) less the projected Class I expenses of the liquidation ($324 million) all divided by the estimated Class II liabilities at the 95% confidence level

($6.584 billion) produced an initial distribution percentage of 16.07%, which the Liquidator rounded down to 15%.

21.     As set forth in the motion, the interim distribution would leave substantial assets available for later distribution.  The allowed Class II claims as of December 31, 2011 totaled approximately $1.294 billion, so the 15% interim distribution on those claims will result in a distribution of approximately $194.1 million.  Only $152.7 million of this will be paid out in cash to the holders of the $1.018 billion of allowed non-guaranty association Class II claims. The guaranty associations have already received early access distributions in excess of 15%, so the $41.4 million part of the early access distributions representing the interim distribution amount will instead no longer be deemed an early access distribution subject to claw back.  This left approximately $962 million in available assets as of December 31, 2011.

22.     The 15% interim distribution will also be made to those Class II claimants whose claims are subsequently allowed.  Such claims have been accounted for through the actuarial estimates of Home's ultimate Class II liabilities used in determining the distribution percentage. As is the case in the financial statements of solvent insurance companies, the actuarial estimates include estimates of liability for known claims and also for claims that are not presently known (the "incurred but not reported" or "IBNR" claims).  The Liquidator's approach reserves sufficient assets for a 15% distribution to undetermined claims – including undetermined United States claims – even if the ultimate value of all Class II claims exceeds the actuarial Central Estimate of $4.112 billion and reaches the 95% confidence level value of $6.584 billion.  The approach is reasonable and prudent not only in using the 95% confidence level for ultimate Class II liabilities but also in excluding from consideration any future assets the Liquidator will

receive, including reinsurance collections on allowed claims and investment income on assets held by the Liquidator.

23.     The Supervising Court entered an order approving the proposed interim distribution on March 13, 2012, and amended it on July 2, 2012.  In light of the position of the United States regarding the Priority Statute, the order provides that the interim distribution is subject to receipt of a waiver of federal priority claims under the Priority Statute from the United States in a form acceptable to the Liquidator.

24.     On April 12, 2012, the Liquidator requested a waiver of federal priority claims from the United States Department of Justice to permit the interim distribution to be made.  A copy of the Liquidator's request is attached as Exhibit B.  In response to a request for information by the Department of Justice on July 3, 2012, the Liquidator provided additional information on July 12, 2012.  In response to a request for further information by the Department of Justice on March 15, 2013, the Liquidator provided additional information on March 28, 2013. Despite numerous follow-ups during 2012 and 2013, the United States has not acted on the Liquidator's request.

<b>The United States' Proofs of Claim</b>

25.     The United States has filed seven proofs of claim with the Liquidator.  Six of those proofs of claim asserted identified known claims, and those claims have been addressed or provided for as set forth in paragraphs 26 through 31 below.  In addition to the six proofs of claim asserting known claims, the United States also filed a "protective" proof of claim concerning unknown claims as set forth in paragraph 32.

26.     On or about June 26, 2004, the United States Department of Labor filed proof of claim GOVT 700090-01 seeking Special Fund assessments under the Longshore and Harbor Workers' Compensation Act.  The Department of Labor supplemented this proof of claim on or

about April 8, 2005, and February 2, 2005, ultimately seeking a total of $2,672,527 from Home. The Liquidator allowed the claim in full and assigned it to Class III priority. The Department of Labor unsuccessfully asserted rights to absolute priority under federal law in this Court, see Solis v. Home Ins. Co., 848 F.Supp.2d 91 (D.N.H. 2012), and is presently contending before the Supervising Court that the claim is in part entitled to Class I priority and otherwise to Class II priority under state law. The Liquidator has set aside an amount equal to the full value of the claim to address it if necessary.

27.     On or about June 11, 2004, the United States filed proof of claim GOVT 709578 (originally numbered CLMN 705062), on behalf of the United States Environmental Protection Agency ("EPA") concerning a claim by the EPA against Home's insureds Lillian Wiesner, Executeam Corp., and John Massei. The EPA and Home's insureds settled their claims in a consent judgment entered September 26, 2012. Under the terms of that judgment, the New York Liquidation Bureau is to pay $606,000 to the EPA under the insurance policies issued by Home, the insureds released their claims under the Home policies, and the insureds are also to make a payment to the EPA of their own. The United States will accordingly receive a payment under the Home policies from the New York Liquidation Bureau. The EPA has advised that it will withdraw its claim in the Home liquidation following receipt of payment from the New York Liquidation Bureau.

28.     On or about June 11, 2004, the United States filed proof of claim GOVT 709580 (originally numbered CLMN 705064) on behalf of the EPA concerning a claim by the EPA against Paul Sauget ("Sauget"), an owner and officer of Home's insured, Sauget & Company. On March 31, 2010, the United States, Sauget's estate, the Liquidator, and others entered into a settlement agreement pursuant to which the proof of claim GOVT 709580 was allowed as a

Class II claim in the amount of $4,125,000.  The settlement agreement was approved by the

Supervising Court on June 3, 2010.  The United States will accordingly share in distributions to

Class II claimants, including the interim distribution, on the allowed $4,125,000 amount.

29.     On or about June 11, 2004, the United States filed proof of claim GOVT 709581

on behalf of the EPA concerning a claim by the EPA against Dominick Manzo, Carmella Manzo,

and Ace-Manzo, Inc. (the "Manzos") regarding clean up at the "Manzo Superfund Site".  Home

had issued an excess liability policy to Ace-Manzo, Inc., listing Dominick and Carmella Manzo

as named insureds.  In March of 2011, the United States entered into a consent decree with the

Manzos that resolved the claims of all parties regarding the Manzo Superfund Site.  The Home

policy was in effect for a single year and provided limits of $3,000,000 above a $2,500,000 layer

of primary coverage written by another insurer.  The coverage underlying Home's policy was not

exhausted by payments under the 2011 consent decree so Home's policy has not been triggered.

The Liquidator accordingly issued a notice of determination denying the United States' claim on

June 28, 2013.

30.     On or about June 11, 2004, the United States filed proof of claim GOVT 709582

on behalf of the EPA concerning claims by the EPA, US Department of the Interior, US

Department of the Navy, and National Oceanic and Atmospheric Administration, arising out of a

secondary refiner-smelter operated by Home's insured R. Lavin & Sons, Inc. ("Lavin").  On

September 30, 2008, Lavin and the Liquidator entered a settlement of all claims arising out of the

Home policies issued to Lavin pursuant to which Lavin's claim was allowed as a Class II claim

in the amount of $2,346,774.  The Supervising Court approved the settlement with Lavin on

February 23, 2009.  The settlement recognized that, pursuant to orders in Lavin's bankruptcy

case, the United States will receive part of the amounts paid on Lavin's claim.  Accordingly, one

condition to effectiveness of the settlement was withdrawal by the United States of proof of claim GOVT 709582.  The United States withdrew the proof of claim on December 5, 2008.

31.     On or about November 15, 2005, the United States filed proof of claim CLMN 710659 on behalf of the EPA concerning a claim by the EPA against Home's insured Azusa Pipe and Tube Bending Corp. ("Azusa").  Home issued a single excess policy to Azusa that was in effect from January 2, 1975 through March 23, 1977, with limits of $1,000,000 above a $500,000 layer of primary coverage written by another insurer.  The Home policy contains a pollution exclusion, and in light of that exclusion the Liquidator concluded that any Home exposure is unlikely.  Azusa's own proof of claim was denied on January 30, 2012.  Counsel for the EPA advised on January 9, 2012 that its claim against Home is contingent since the interim remediation, expected to be completed in 2017, is currently being funded by other potentially responsible parties.  The Liquidator agreed to defer determination of the EPA's proof of claim pending further developments.  There is no present claim.

32.     On or about June 11, 2004, the United States filed proof of claim GOVT 709579 (originally numbered CLMN 705065) on behalf of the EPA, the US Department of the Interior, the National Oceanic and Atmospheric Administration of the Department of Commerce, the Department of Defense, and "any other agencies that may have claims."  This "protective" proof of claim states that:

> The United States of America, on behalf of the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the National Oceanic and Atmospheric Administration of the Department of Commerce, the Department of Defense, and any other agencies that may have claims, files this protective Proof of Claim as it relates to any claims held by these agencies that are not currently known or are not currently known to relate to the Home Insurance Company.  If or when the United States learns of actual claims held by these agencies, the United States will file an Amended Proof of Claim relating to the specific actual claim.  The United States reserves the right to supplement this Proof of Claim.

The proof of claim asserts rights under the Priority Statute. It states that "[t]he Federal Priority Act, 31 U.S.C. §3712 [sic], provides the United States with certain rights of priority that may be applicable." The United States has thus notified the Liquidator that it contends the Priority Statute protects it with respect to unknown claims. It has not supplemented this proof of claim since filing the Azusa proof of claim in 2005.

## Other Matters

33.     The Liquidator is aware of three circumstances that give rise to possible United States claims against Home in addition to those described in paragraphs 26 through 31 above. These matters have been addressed as set forth in paragraphs 34 through 36 below.

34.     During a July 3, 2012, conversation, representatives of the Department of Justice noted that the United States might have a claim concerning Home's insured Thoro Products Co. ("Thoro") arising out of pollution at certain sites in Colorado. Neither Thoro nor the United States has filed a proof of claim with respect to this matter, but the Liquidator has reviewed it. Home issued a single general liability policy to Thoro with limits of $1,000,000. Because that policy contained an absolute pollution exclusion, the Liquidator believes that Home has no exposure.

35.     Home issued a number of insurance policies to the predecessors in interest of LTV Corporation ("LTV"). LTV and forty-eight affiliates filed petitions for relief under Chapter 11 in 2000 which were consolidated in the United States Bankruptcy Court for the Northern District of Ohio (Case No. 00-43866). In 2002, the bankruptcy court approved the sale of certain of LTV's assets to ArcelorMittal USA Inc. (referred to as ISG) and, in connection with that sale, ISG acquired an interest in proceeds of certain LTV insurance policies including certain policies issued by Home. Once Home was ordered liquidated, LTV and ISG filed proofs

of claim concerning certain environmental claims.  The Liquidator, LTV, and ISG entered a settlement agreement on May 25, 2012, that provided for an $8,000,000 allowance at Class II priority.  The agreement was approved by the Supervising Court on June 29, 2012.  The United States did not file a proof of claim with respect to LTV.  However, the agreement also required bankruptcy court approval of the agreement and of a related stipulation under which the United States will receive a percentage of the distributions from Home and covenants not to sue the Liquidator and Home for matters arising out of the Home policies.  The agreement and the stipulation were approved by the bankruptcy court on July 3, 2012.

36.     Home issued policies to Federal Pacific Electric Company under which Cornell-Dubilier Electronics, Inc. ("CDE") was a named insured.  CDE filed proofs of claim concerning certain environmental claims.  The Liquidator and CDE entered a settlement agreement on February 20, 2013 that provided for a $15,000,000 allowance at Class II priority.  The agreement was approved by the Supervising Court on May 15, 2013.  The United States has not filed a proof of claim with respect to CDE.  However, CDE has entered a consent decree with respect to the claims against it, including claims of the United States, filed August 28, 2012 in *United States of America and the State of New Jersey v. Cornell-Dubilier Electronics, Inc.,* Civil Action No. 2:12-cv-050407-JLL-MAH (D. N.J.).  That consent decree resolves the underlying claims by the United States against CDE and provides for percentages of insurance proceeds received by CDE, including distributions from Home, to be paid to the United States.

### The Position of the United States

37.     The Priority Statute provides a priority for federal claims by requiring that a claim of the United States "shall be paid first" by an insolvent debtor in liquidation proceedings.  31 U.S.C. § 3713(a)(1).  The Priority Statute also provides for potential personal liability of

representatives of estates that pay a non-federal debt before an unpaid federal claim.  31 U.S.C. § 3713(b).

38.     The McCarran-Ferguson Act, 15 U.S.C. § 1012, limits the application of the Priority Statute in state insurer liquidation proceedings by protecting state insurer liquidation priority statutes from preemption by the Priority Statute to the extent they serve to protect policyholders.  *United States Dep't. of the Treasury v. Fabe*, 508 U.S. 491, 493, 508-09 (1993); *Ruthardt v. United States*, 303 F.3d 375, 381-84 (1st Cir. 2002), *cert. denied*, 538 U.S. 1031 (2003).  The policy-level claims afforded priority under N.H. RSA 402-C:44, II accordingly have priority over non-policy claims of the United States assigned lower priority by RSA 402-C:44, III notwithstanding the Priority Statute.

39.     In this circuit, state insurer liquidation claim filing deadlines do not apply to claims by the federal government.  See *Ruthardt v. United States*, 303 F.3d 375, 384-86 (1st Cir. 2002), *cert. denied*, 538 U.S. 1031 (2003); *Garcia v. Island Program Designer, Inc.*, 4 F.3d 57, 62 (1st Cir. 1993).  Accordingly, the United States may file claims regardless of time limitations established pursuant to N.H. RSA 402-C:26 and :37.

40.     The United States, acting by and through the Department of Justice and defendant Attorney General Holder, has taken the position that the Liquidator faces potential personal liability under the Priority Statute in the event presently unknown federal policy-level claims are subsequently asserted and cannot be paid because assets were previously distributed to other creditors.

41.     The United States, acting by and through the Department of Justice and defendant Attorney General Holder, has taken the position that the Liquidator faces personal liability under the Priority Statute if he makes the interim distribution.  In over sixteen months, the United

States has not made a decision on the Liquidator's request for a waiver.  Notwithstanding the prudent determination of the interim distribution percentage, the substantial assets available for subsequent distribution, and the amounts it will receive from the interim distribution with respect to the Sauget, Lavin, LTV and CDE settlements, the United States has not to date been willing to grant a waiver of claims under the Priority Statute to permit the interim distribution to be made.

### Injury to the Liquidator and the Policyholders of Home

42.     Nine years after Home was placed in liquidation, the Liquidator sought and received approval from the Supervising Court to make the 15% interim distribution subject to receipt of a federal waiver.  More than sixteen months have passed without a decision since the Liquidator requested the waiver from the United States.

43.     If the Liquidator makes the interim distribution of assets without a waiver, and the position of the United States later prevails, the Liquidator faces potential personal liability under the Priority Statute.  Thus, the position of the United States prevents the Liquidator from performing his duties under state law to make interim distributions to creditors of Home.

44.     The inability of the Liquidator to distribute assets causes continuing harm to the policyholders and other policy level creditors of the Home estate.  Ten years after Home was placed in liquidation, Class II creditors (other than the guaranty associations) have not received any distributions from the Home estate.

45.     In these circumstances, there exists an actual controversy over the question whether the Liquidator is subject to personal liability for making the interim distribution.  The Liquidator accordingly requests the Court to enter the declarations set forth below.

**Count I**

46.     The Liquidator realleges paragraphs 1 through 45 above.

47.     The known Class II claims of the United States in the Home liquidation described in paragraphs 27 through 31 and the matters described in paragraphs 34 through 36 above have been addressed by the Liquidator.  To the extent its claims have been allowed, the United States will receive the same percentage distributions from the Home estate as all other allowed Class II claims.

48.     Although the Liquidator disputes the priority of the claim of the Department of Labor described in paragraph 26 above, he has set aside sufficient assets to pay the full amount of the claim.  That claim is the subject of a pending dispute over priority under state law in the Supervising Court, and the United States will receive the distribution percentage applicable to the priority class in which the claim is ultimately determined to fall.

49.     For a representative of an estate to be personally liable under the Priority Statute, the representative must pay amounts on other claims such that the estate cannot pay amounts on valid claims of the United States that the United States is entitled to receive under federal law. The United States will receive the amounts to which it is entitled under federal law with respect to the known claims and matters described in paragraphs 26 through 31 and 34 through 36 above.  In these circumstances, the known claims and matters will not trigger potential personal liability under 31 U.S.C. § 3713 for making the interim distribution.

50.     For a representative of an estate to be personally liable under the Priority Statute, the United States must have a "claim" against the insolvent estate at the time the representative distributes assets.  The unknown claims asserted by the United States in the protective proof of claim described in paragraph 32 are not "claims" within 31 U.S.C. § 3713 so as to trigger potential personal liability under that statute for making the interim distribution.

17

51.     For a representative of an estate to be personally liable under the Priority Statute, the representative must be on notice of a claim of the United States at the time the representative distributes assets.  The assertion of unknown claims in the protective proof of claim described in paragraph 32 does not place the Liquidator on notice of claims so as to trigger potential personal liability under 31 U.S.C. § 3713 for making the interim distribution.

52.     The Liquidator has taken unknown claims, including unknown claims of the United States, into account in the 15% interim distribution because such claims are provided for in the actuarial estimate of unpaid Class II liabilities used to determine the interim distribution percentage.  Consistent with the requirement of New Hampshire law that interim distributions protect those with undetermined claims, the interim distribution approved by the Supervisory Court reserves sufficient assets for an equivalent 15% distribution to presently unknown claims even if the ultimate value of all Class II claims exceeds the actuarial Central Estimate of $4.112 billion and reaches the 95% confidence level value of $6.584 billion.

53.     The Liquidator may make the 15% interim distribution to claimants with allowed Class II claims without incurring personal liability to the United States.

**Count II**

54.     The Liquidator realleges paragraphs 1 through 53 above.

55.     Title 5 U.S.C. § 706(1) authorizes the Court to "compel agency action . . . unreasonably delayed[.]"

56.     The United States has unreasonably delayed action on the Liquidator's request for waiver regarding the proposed 15% interim distribution to claimants with allowed Class II claims.

WHEREFORE, the Liquidator requests that the Court enter a final judgment:

1.      Declaring that the unknown claims asserted by the United States are not claims within 31 U.S.C. § 3713 that can form the basis for imposing personal liability under that statute on the Liquidator for making the interim distribution;

2.      Declaring that the assertion of unknown claims by the United States does not place the Liquidator on notice of claims that can form the basis for imposing personal liability under 31 U.S.C. § 3713 on the Liquidator for making the interim distribution;

3.      Declaring that the Liquidator may make the 15% interim distribution to claimants with allowed Class II claims without incurring personal liability to the United States;

4.      Ordering the United States to act on the Liquidator's request for a waiver regarding the 15% interim distribution; and

5.      Granting such other relief as is proper, including appropriate costs and fees under 28 U.S.C. § 2412.

Respectfully submitted,

ROGER A. SEVIGNY, INSURANCE
COMMISSIONER OF THE STATE OF
NEW HAMPSHIRE, AS LIQUIDATOR
OF THE HOME INSURANCE
COMPANY,

By his attorney,

JOSEPH A. FOSTER,
NEW HAMPSHIRE
ATTORNEY GENERAL

J. Christopher Marshall
NH Bar ID No. 1619
Civil Bureau
New Hampshire Department of Justice
33 Capitol Street
Concord, NH  03301-6397
(603) 271-3650


*/s/ J. David Leslie*
*/s/ Eric A. Smith*
J. David Leslie
NH Bar ID No. 16859
Eric A. Smith
NH Bar ID No. 16952
Rackemann, Sawyer & Brewster P.C.
160 Federal Street
Boston, MA  02110
(617) 542-2300

September 9, 2013