UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Roger A. Sevigny,**
**New Hampshire Insurance Commissioner**

     **v.**                                Civil No. 13-cv-401-PB
                                             Opinion No. 2014 DNH 157
**United States, et al.**


**MEMORANDUM AND ORDER**


This case arises from efforts taken by the New Hampshire
Insurance Commissioner, as liquidator of the Home Insurance
Company, to disburse assets from Home's estate to its creditors.
The United States notified the Commissioner that it may have
claims against Home that are "not currently known" but
nonetheless must be paid prior to any other distributions from
Home's estate pursuant to the Federal Priority Act.  See 31
U.S.C. § 3713.  The Commissioner seeks (1) a declaratory
judgment that the United States' claims are not subject to
§ 3713, and (2) an order compelling the United States to respond
to his earlier request that it waive any claims it may have
against Home.  The United States moves to dismiss the complaint
pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6).  I grant the motion in part and deny it in part.

## I.  BACKGROUND[1]

On June 13, 2003, the Merrimack County Superior Court declared that the Home Insurance Company was insolvent, appointed the New Hampshire Insurance Commissioner as its liquidator, and "directed [the Commissioner] to administer and make payments on all claims against The Home estate filed with the Liquidator . . . in accordance with New Hampshire's priority statute, RSA 402-C:44."  In re Rehabilitation of The Home Ins. Co., No. 03-E-0106, slip op. at 2, 7 (N.H. Super. Ct. June 13, 2003).  New Hampshire Revised Statutes section 402-C:44 specifies that administration costs and policy-related claims "shall be paid in full or adequate funds retained for the payment before" the federal government and other lower priority claimants "receive any payment."  The court set June 13, 2004 as the deadline for third parties to file claims against Home.  The Home Ins. Co., No. 03-E-0106, at 8.

---

[1] The facts are drawn from the complaint, Doc. No. 1, and from other documents provided by the parties that are central to the complaint's factual allegations.  See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

On October 23, 2003, the court approved the Commissioner's request to distribute estate assets to certain insurance guaranty associations.  The Commissioner subsequently made nine distributions to guaranty associations totaling $238 million. These distributions were subject to a "clawback" agreement in which the guaranty associations would return the assets in the event they were required to pay higher-priority claims.  See N.H. Rev. Stat. Ann. § 402-C:29(III)(b)(4).  The court's approval of the initial six distributions was made contingent on the Commissioner's receipt of a waiver of federal priority claims from the United States to ensure that the Commissioner would not be exposed to potential personal liability for the distributions.  See 31 U.S.C. § 3713(b) ("A representative of . . . an estate . . . paying any part of a debt of the . . . estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."). The United States provided a limited waiver with respect to the first six distributions, but refused to waive potential federal priority claims for the final three distributions. Nevertheless, relying on the protection afforded by the clawback agreements, the Commissioner sought and obtained the court's approval to make the final three distributions.

3

On June 11, 2004,[2] the Commissioner received the following "protective" proof of claim from the United States:

> The United States of America, on behalf of the U.S. Environmental Protection Agency, the U.S. Department of Interior, the National Oceanic and Atmospheric Administration of the Department of Commerce, the Department of Defense, and any other agencies that may have a claims [sic], files this protective Proof of Claim as it relates to any claims held by these agencies that are not currently known or are not currently known to relate to the Home Insurance Company. If or when the United States learns of actual claims held by these agencies, the United States will file an Amended Proof of Claim relating to the specific actual claim. The United States reserves the right to supplement this Proof of Claim.

Doc. No. 10-1. The proof of claim also notes that "[t]he Federal Priority Act . . . provides the United States with certain rights of priority that may be applicable." Id.

After nearly nine years administering the Home estate, the Commissioner sought the court's approval on February 11, 2012 to make an interim distribution of approximately $194.1 million to partially satisfy certain court-approved, policy-related claims. Doc. No. 1-1; see N.H. Rev. Stat. Ann. § 402-C:46(I) ("Under the direction of the court, the liquidator shall pay dividends in a

---

[2] Between June 2004 and November 2005, the United States filed six proofs of known claims against Home. The Commissioner has also identified three matters that may give rise to claims by the United States against Home for which the United States has not yet filed a proof of claim. The Commissioner does not dispute the validity of these claims here.

manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims . . . .").  In determining the amount of the proposed distribution, the Commissioner considered the estate's available assets, projected administration costs over the life of the estate, and a conservative estimate of Home's as yet undetermined policy-related obligations.  On March 13, 2012, the court approved the interim distribution, which is not subject to clawback but is contingent on the Commissioner's receipt of a waiver of federal priority claims.[3]

Accordingly, the Commissioner sought a waiver of claims from the United States on April 12, 2012.  Doc. No. 1-2.  The United States requested and received additional information from the Commissioner in July 2012 and March 2013, but has not yet acted on the Commissioner's request.  In its memorandum supporting the motion to dismiss, the United States notes that the Environmental Protection Agency has identified 7000 possible claims against Home; it asserts that it anticipates providing Home with a complete list of claims from all federal agencies by December 2014.  Doc. No. 8.

---

[3] The court amended its order approving the distribution on July 2, 2012.

## II. __STANDARD OF REVIEW__

"Under Fed. R. Civ. P. 12(b)(1), a party may contest the court's subject matter jurisdiction by challenging the allegations in the complaint as insufficient on their face or by questioning the accuracy of those allegations." Hernández-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005) (per curiam) (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)).  Because the United States has pursued the former path here, I "must credit the [Commissioner's] well-pleaded factual allegations[,] . . . draw all reasonable inferences from them in [the Commissioner's] favor, and dispose of the challenge accordingly." Sánchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 106 (1st Cir. 2012) (quoting Valentin, 254 F.3d at 363), cert. denied, 133 S. Ct. 1631 (2013).

"This standard is the same as is applied on a Rule 12(b)(6) motion," id. at 107 (citing McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006)), in which a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it pleads

6

"factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged.  The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  Id. at 678
(citation omitted).

     In deciding a Rule 12(b)(6) motion, I employ a two-step
approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,
12 (1st Cir. 2011).  First, I screen the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."
Id. (alterations and internal quotation marks omitted).  A claim
consisting of little more than "allegations that merely parrot
the elements of the cause of action" may be dismissed.  Id.
Second, I credit as true all non-conclusory factual allegations
and the reasonable inferences drawn from those allegations, and
then determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Twombly, 550 U.S. at 556.  The "make-or-break
standard" is that those allegations and inferences, taken as
true, "must state a plausible, not a merely conceivable, case

7

for relief."  Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

### III.   ANALYSIS

I first consider the United States' arguments to dismiss Count I, which seeks a declaratory judgment regarding the applicability of the Federal Priority Act to the claims referenced in the United States' protective proof of claim.  I then turn to Count II, which seeks an order compelling the United States to respond to the Commissioner's waiver request.

### A.   Count I: Declaratory Judgment

The United States seeks dismissal of Count I on three grounds, all of which are jurisdictional: (1) lack of standing; (1) lack of a federal question; and (3) lack of a valid waiver of sovereign immunity.  See Fed. R. Civ. P. 12(b)(1).  Before proceeding to the United States' arguments with respect to each of these grounds, I briefly consider a nearly indistinguishable Supreme Court case involving both a declaratory judgment action and the Federal Priority Act.

In U.S. Department of Treasury v. Fabe, a state superintendent of insurance acting as liquidator of an insolvent insurance company sought a declaratory judgment permitting him to pay claims in the order specified by the state's priority statute notwithstanding the Federal Priority Act's mandate that federal claims be paid first.  See 508 U.S. 491, 494-95 (1993). Despite presenting a factual and procedural posture essentially mirroring that in the present case,[4] Fabe is most notable for the issues that it did not discuss.  In particular, not one of the jurisdictional arguments that the United States raises here was mentioned by the parties or courts involved in the Fabe litigation, see generally 508 U.S. 491; 939 F.2d 341, this

---

[4] In Fabe, the United States notified the liquidator "that it would seek first priority for its [known] claims by virtue of the" Federal Priority Act.  Fabe v. U.S. Dep't of Treasury, 939 F.2d 341, 343 (6th Cir. 1991), aff'd in part, rev'd in part, 508 U.S. 491.  The parties disputed whether a related federal statute exempted the state's priority statute from the Federal Priority Act's preemptive force.  Fabe, 508 U.S. at 494-95. Here, the United States notified the Commissioner that its rights under the Federal Priority Act "may be applicable" to claims that are "not currently known," Doc. No. 10-1, and the Commissioner seeks a declaratory judgment concerning the proper interpretation of the term "claim" as it is used in the Federal Priority Act.  Doc. No. 1.  For present purposes, these differences are immaterial.  The latter distinction relates to the merits of the dispute rather than a court's jurisdiction to hear it, and while the former distinction arguably affects the standing inquiry, see Doc. No. 12, it is not dispositive of that question for the reasons discussed below.

despite a federal court's obligation to consider jurisdictional defects sua sponte at any stage of the proceedings if not otherwise presented by the litigants.  See, e.g., Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011) (sovereign immunity); Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 115 & n.1 (1st Cir. 1998) (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 19 & n.19 (1983)) (federal question jurisdiction); Bzdzuich v. U.S. Drug Enforcement Admin., 76 F.3d 738, 742 (6th Cir. 1996) (per curiam) (citing Am. Fed'n of State, Cnty. & Mun. Emps. Local 506 v. Private Indus. Council, 942 F.2d 376, 378 (6th Cir. 1991)) (standing).  In fact, none of the Federal Priority Act cases seeking declaratory relief against the United States that have reached the courts of appeals allude to any arguments relating to jurisdictional defects, see generally Ruthardt v. United States, 164 F. Supp. 2d 232 (D. Mass. 2001), aff'd, 303 F.3d 375 (1st Cir. 2002), cert. denied, 538 U.S. 1031 (2003); Gordon v. U.S. Dep't of Treasury, 668 F. Supp. 483 (D. Md. 1987), aff'd, 846 F.2d 272 (4th Cir. 1988) (per curiam), cert. denied, 488 U.S. 954 (1988), and I am aware of no court at any level that has accepted any of the United States' arguments under comparable circumstances.

10

Of course, a court's silence with respect to an issue does not equate to a holding by implication.  But the lack of any jurisdictional dispute in Fabe or other comparable cases nevertheless helps to frame the three apparently novel arguments that the United States raises here.

    1.   The Commissioner Has Standing to Seek Declaratory Relief

The Declaratory Judgment Act specifies that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201(a).  The Act's "case of actual controversy" requirement "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)).  For a plaintiff to have standing to seek declaratory relief, the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of

facts.'" Id. (second alteration in original) (quoting Aetna, 300 U.S. at 240-41). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting Md. Casualty Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

The United States argues that the Commissioner's alleged injury – the personal liability he potentially faces if he administers Home's estate in a manner he believes to be legally permissible – is not "sufficient[ly] immedia[te] and real[]" to confer standing. See id. It contends that because it has never asserted the priority of its claims or threatened suit if the Commissioner makes an interim distribution, any such injury is speculative.[5] I disagree. Although the Commissioner's choice to

_____

[5] The United States maintains that even had it explicitly threatened suit, the "threat of litigation by itself is not a sufficient injury under Article III." Doc. No. 12 (quoting U.S. Bank, Nat'l Ass'n v. U.S. Dep't of Homeland Sec., No. 13-CV-00072, 2014 WL 494577, at *3 (E.D. Wis. Feb. 6, 2014). But that is only true when the threatened party engages in the challenged conduct and then makes the tactical decision "to be a plaintiff by winning the proverbial race to the courthouse." U.S. Bank, 2014 WL 494577, at *3 (quoting Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 712 (7th Cir. 2002)) ("The result might be different if U.S. Bank had sought a declaratory judgment before it actually [engaged in the challenged conduct], but at this point U.S. Bank either is or is not liable under the Federal Priority

refrain from making the interim distribution while this action is pending has eliminated the immediate threat of personal liability,[6] that quite rational decision does not foreclose the availability of declaratory relief.  See id. at 128 (affirming plaintiff's standing even though his "continuation of royalty payments ma[de] what would otherwise be an imminent threat at least remote, if not nonexistent").

It is well established that "where threatened action by government is concerned . . . a plaintiff [need not] expose himself to liability before bringing suit to challenge the basis for the threat."  Id. at 128-29 (citing Steffel v. Thompson, 415 U.S. 452, 458-60 (1974); Vill. of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926); Terrace v. Thompson, 263 U.S. 197, 215-16 (1923); Ex parte Young, 209 U.S. 123 (1908)).  Likewise, a

---

Statute, and a declaratory judgment is not 'a bona fide necessity' for U.S. Bank to carry on with its business.").  In contrast, the threat of litigation is certainly a sufficient injury when the threatened party is coerced into engaging in "threat-eliminating behavior" in order to avoid a potential lawsuit.  See MedImmune, 549 U.S. at 129.

[6] The Commissioner previously made three distributions to guaranty association without receiving a waiver of claims from the United States - thus potentially exposing himself to suit under the Federal Priority Act – but these distributions were conditioned on clawback arrangements that effectively eliminate any risk of personal liability.  The planned interim distribution would not offer the same protection.

declaratory judgment defendant need not explicitly threaten suit so long as his or her conduct effectively coerces the plaintiff to refrain from exercising claimed rights.  See id. at 132 n.11 (noting with approval that in Aetna, "jurisdiction obtained even though the very reason the insurer sought declaratory relief was that the insured had given no indication that he would file suit"); cf. Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed. Cir. 1995) ("[O]ne who may become liable . . . should not be subject to manipulation by [a declaratory judgment defendant] who uses careful phrases in order to avoid explicit threats, thus denying recourse to the courts . . . .").

Here, the United States' conduct - filing a protective proof of claim with reference to its rights under the Federal Priority Act, refusing to grant a waiver of claims for three distributions after granting such waivers for prior distributions, refraining from acting on the Commissioner's current waiver request, and informing the Commissioner that the United States is "refin[ing a] list of 7,000 potential claims" that it "may file . . . regardless of time limitations," see Doc. No. 8 – caused the Commissioner to reasonably perceive a genuine threat of personally liability if he proceeds with the

interim distribution.[7] The Commissioner's "threat-eliminating behavior" in refraining from making the interim distribution was "effectively coerced" by, and "fairly . . . trace[able] to," the United States' conduct.[8] See MedImmune, 549 U.S. at 128-29 & n.8 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

The Commissioner has been ordered "to administer and make payments on all claims . . . in accordance with New Hampshire's priority statute," The Home Ins. Co., No. 03-E-0106, at 7, and

[7] The United States was surely entitled to take these actions, but the lawfulness of its conduct does not negate the fact that "a substantial controversy . . . of sufficient immediacy and reality" currently exists between the parties, which is dispositive of the standing inquiry. See MedImmune, 549 U.S. at 127.

[8] Because the Commissioner himself requested that the superior court make its approval of the interim distribution conditioned on his receipt of a waiver, the United States contends that any injury that the Commissioner has suffered by not making the distribution is "traceable to and redressable by him alone." See Doc. No. 8. This indicates confusion regarding the harm that is the focus of the standing inquiry. See Am. Civil Liberties Union v. Nat'l Sec. Agency, 493 F.3d 644, 656 (6th Cir. 2007) ("[I]t is important to distinguish the two harms that surround a declaratory judgment action. The anticipated harm that causes one to refrain from the activities may satisfy the 'injury-in-fact' element of standing if it is sufficiently imminent and concrete. . . . [T]he other harm - the harm that results from refraining from the potentially harmful activities - is another matter."). Regardless, the Commissioner's request - like his choice to refrain from making the interim distribution - was effectively coerced by the threat of personal liability.

15

he has a statutory duty to "pay dividends in a manner that will
assure the proper recognition of priorities and a reasonable
balance between the expeditious completion of the liquidation
and the protection of unliquidated and undetermined claims."
N.H. Rev. Stat. Ann. § 402-C:46(I).  He is now faced with the
unenviable choice between foregoing these obligations
indefinitely or exposing himself to a suit in which he could be
held personally liable for his official actions.  This is
exactly the type of concrete injury that it was "the very
purpose of the Declaratory Judgment Act to ameliorate."[9]  See
MedImmune, 549 U.S. at 129 (quoting Abbott Labs. v. Gardner, 387
U.S. 136, 152 (1967)).  The Commissioner thus has standing to
pursue the declaratory relief he seeks in Count I.

  2. The Commissioner Has Pled a Cause of Action Arising
    Under Federal Law

  The United States next argues that because "[n]o federal
statute affording the [Commissioner] rights is pled in either

_____

[9] The United States argues that "the situation in which the
[Commissioner] believes himself to be is one that the law
permits due to the interplay of Fabe, . . . the McCarran-
Ferguson Act, the state insurance insolvency laws, and the
Federal Priority Statute."  Doc. No. 12.  With respect to this
court's subject matter jurisdiction, that is clearly incorrect.
I may or may not ultimately agree with the Commissioner on the
merits, but Fabe itself demonstrates that the Commissioner need
not wait indefinitely for a declaration of his rights.

count[,] . . . no federal question jurisdiction exists."[10]  Doc.

No. 8.  This misunderstands the basis for subject matter

jurisdiction in declaratory judgment actions.

"[T]he Declaratory Judgment Act does not 'extend' the

'jurisdiction' of the federal courts."  Medtronic, Inc. v.

Mirowski Family Ventures, LLC, 134 S. Ct. 843, 848 (2014)

(quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667,

671 (1950)).  Accordingly, "federal courts, when determining

declaratory judgment jurisdiction, often look to the 'character

of the threatened action.'"  Id. (quoting Public Serv. Comm'n of

Utah v. Wycoff Co., 344 U.S. 237, 248 (1952)).  Jurisdiction is

appropriate if "'a coercive action' brought by 'the declaratory

judgment defendant' . . . 'would necessarily present a federal

question.'"  Id. (quoting Franchise Tax, 463 U.S. at 19).

As explained above, the United States' conduct in this case

presents a genuine threat of a coercive action in which the

Commissioner may be held personally "liable to the extent of

---

[10] The United States also argues that "because both counts plead
no elements of any cause of action at all, the Complaint asserts
no claim on which relief can be granted."  Doc. No. 8.  To the
contrary, the complaint alleges "an actual controversy between
the parties concerning the interpretation and application of
federal law" and that this court has "original jurisdiction"
over the matter.  Doc. No. 1.  This states a claim upon which
relief may be granted.  See 28 U.S.C. § 2201, Fed. R. Civ. P.
12(b)(6).

[any] payment for [the United States'] unpaid claims" if he
proceeds with the interim distribution.  31 U.S.C. § 3713(b).
The threatened action under the Federal Priority Act would
necessarily present a federal question.  Illinois ex rel. Gordon
v. Campbell, 329 U.S. 362, 371 (1946) ("The effect and operation
of a lien in relation to the claim of priority by the United
States under [the Federal Priority Act] is always a federal
question."); Fabe, 939 F.2d at 347 ("[A]bstention is
inappropriate in this case which presents a direct federal
question."); People's Trust Co. v. United States, 23 F.2d 381,
384 (1st Cir. 1928) ("Had the [United States] asserted its right
to priority[,] . . . .  it may have the matter reviewed . . . on
the federal question presented by [the Federal Priority Act].").
The Commissioner seeks a declaratory judgment to determine
whether he may be held liable under the Federal Priority Act if
he proceeds with the interim distribution; hence, the first
count of his complaint arises under federal law.

    3.   The United States Has Waived its Sovereign Immunity

    The Commissioner has sued the United States; thus he "faces
three threshold requirements to stating a viable claim for
relief at the pleading stage: [he] must establish federal
subject matter jurisdiction, a waiver of sovereign immunity, and

18

a cause of action." See El Paso Natural Gas Co. v. United States, 750 F.3d 863, 892 (D.C. Cir. 2014) (citing Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997)). Federal subject matter jurisdiction is proper for the reasons discussed above.  The Declaratory Judgment Act provides the Commissioner with a cause of action.  See, e.g., Samuels v. Mackell, 401 U.S. 66, 70 (1971) ("Although [a] declaratory judgment . . . [i]s a statutory remedy rather than a traditional form of equitable relief, . . . a suit for declaratory judgment [i]s nevertheless 'essentially an equitable cause of action' . . . ." (quoting Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300 (1943))).  The only remaining question is whether the Commissioner has identified a valid waiver of the United States' sovereign immunity.

     The Commissioner alleges that the United States has consented to a suit for declaratory relief in this case pursuant to 5 U.S.C. § 702, which states in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or

that the United States is an indispensable party.
Section 702's first sentence "supplies a right to seek review of
agency action" under the Administrative Procedure Act.  Michigan
v. U.S. Army Corps of Engrs., 667 F.3d 765, 774 (7th Cir. 2011)
(citing Veterans for Common Sense v. Shinseki, 644 F.3d 845, 866
(9th Cir. 2011)).  The United States argues that the
Commissioner has failed to satisfy the requirements of the first
sentence because he does not allege that the United States has
committed a "legal wrong" "within the meaning of a relevant
statute."  Doc. No. 8 (quoting § 702).  But the Commissioner
seeks judicial review under the Declaratory Judgment Act rather
than the APA; consequently, § 702's first sentence is irrelevant
here and the United States' reliance on it is misplaced.

Instead, the Commissioner identifies the necessary waiver
in § 702's second sentence, which "waives sovereign immunity not
just for APA claims but also, more broadly, for claims 'seeking
relief other than money damages,'" El Paso, 750 F.3d at 892
(quoting § 702), including claims "where only declaratory or
injunctive relief is sought" against a federal agency or its
officers.[11]  R.I. Comm. on Energy v. Gen. Servs. Admin., 561 F.2d

---

[11] An exception exists for claims that "seek relief expressly or
impliedly forbidden by another statute."  Gabriel v. Gen. Servs.
Admin., 547 F. App'x 829, 830 (9th Cir. 2013) (quoting Tucson

397, 405 (1st Cir. 1977); accord Puerto Rico v. United States,

490 F.3d 50, 58 (1st Cir. 2007).  "The waiver applies . . . in

cases . . . arising under federal law," such as this one.

Michigan, 667 F.3d at 775-76 ("Congress 'identified as the

measure's clear purpose elimination of the sovereign immunity

defense in all equitable actions . . . .'" (quoting Trudeau v.

Fed. Trade Comm'n, 456 F.3d 178, 186-87 (D.C. Cir. 2006))).

    The United States argues that § 702's second sentence does

not waive its sovereign immunity because the Commissioner has

not alleged that the United States has engaged in "unlawful

official action."  Doc. No. 8 (citing Treasurer of N.J. v. U.S.

Dep't of Treasury, 684 F.3d 382, 400 (3d Cir. 2012) (quoting

H.R. Rep. No. 94–1656, at 3 (1976), reprinted in 1976

U.S.C.C.A.N. 6121, 6123), cert. denied, 133 S. Ct. 2735 (2013)).

As an initial matter, the statute's plain text requires that the

agency or its representative "acted or failed to act in an

official capacity," and the Supreme Court has interpreted § 702

to mean what it says.  See Match-E-Be-Nash-She-Wish Band of

Pottawatomi Indians v. Patchak, 132 S. Ct. 2199, 2204 (2012)

("[5 U.S.C. § 702] generally waives the Federal Government's

immunity from a suit 'seeking relief other than money damages

_____

Airport Auth. v. Gen. Dynamics Corp., 136 F.3d 641, 645 (9th

Cir. 1998)).  No other statute forbids the waiver here.

and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'  That waiver . . . cover[s this] suit, which objects to official action of the Secretary and seeks only non-monetary relief.").

Although § 702's legislative history does state that it "would eliminate the defense of sovereign immunity as to any action in a Federal court seeking relief other than money damages and stating a claim based on the assertion of unlawful official action by an agency or by an officer or employee of the agency," see H.R. Rep. No. 94-1656, at 3, courts have quoted this language solely to emphasize Congress's intent "that [§ 702] would implement a broad waiver of sovereign immunity," not for the proposition that an agency's conduct must meet a certain standard of "unlawfulness."  See Treasurer of N.J., 684 F.3d at 400; accord Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1345 (Fed. Cir. 2011); Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 524 (9th Cir. 1989); Dronenburg v. Zech, 741 F.2d 1388, 1390-91 (D.C. Cir. 1984); B.K. Instrument, Inc. v. United States, 715 F.2d 713, 724-25 (2d Cir. 1983); Warin v. Dir., Dep't of Treasury, 672 F.2d 590, 592 (6th Cir. 1982) (per curiam); Thompson/Ctr. Arms Co. v. Baker,

686 F. Supp. 38, 40 & n.4 (D.N.H. 1988).  This court and others
have held that § 702 waives the United States' sovereign
immunity in suits seeking declaratory relief to resolve disputes
over an agency's interpretation of federal law in the absence of
alleged unlawful agency conduct.  See, e.g., Warin, 672 F.2d at
591 (challenge to a federal agency's preliminary determination
that the plaintiff's proposed weapon design would be subject to
regulation under the National Firearms Act); Thompson/Ctr. Arms,
686 F. Supp. at 40-41 (same).

    The United States contends that "it belies [§ 702's]
purpose and history to infer that Congress waived immunity to
review agency action alleged to be lawful," Doc. No. 12,
implying that a contrary conclusion would permit plaintiffs to
seek declaratory judgments against the United States with
respect to any official act, regardless of the circumstances.
But that is clearly not the case.  As already discussed, the
standing inquiry ensures that the United States will only be
subject to suit for declaratory relief when there is "a
substantial controversy, between parties having adverse legal
interests, of sufficient immediacy and reality."[12] MedImmune,

---

[12] The Declaratory Judgment Act was designed to resolve such
controversies, which may arise even in the absence of prior
unlawful action.  See, e.g., Warin, 672 F.2d at 591;

549 U.S. at 127.  Here, the United States' official actions

presented the Commissioner with a sufficiently imminent threat

of personal liability to grant him standing to seek a

declaratory judgment.  Hence, the United States' conduct is

sufficient to satisfy the requirement that it "acted or failed

to act in an official capacity" for purposes of § 702.  Cf.

MedImmune, 549 U.S. at 128-29 ("[W]here threatened action by

government is concerned . . . a plaintiff [need not] expose

himself to liability before bringing suit to challenge the basis

for the threat . . . ."); Fabe, 508 U.S. at 494-95 (asserting

jurisdiction over a declaratory judgment action brought against

the United States under comparable circumstances).

Accordingly, the United States has waived its sovereign

immunity with respect to Count I.

**B.**   **Count II: Order to Compel**

The Commissioner also argues that the United States has

"unreasonably delayed" acting upon his request for a waiver of

federal claims and urges me to compel the United States to

Thompson/Ctr. Arms Co., 686 F. Supp. at 40-41.  As noted,
Congress has broadly waived the United States' immunity to suits
brought under that Act.  See, e.g., Bowen v. Massachusetts, 487
U.S. 879, 892-93 (1988) ("[5 U.S.C. 702's second sentence] was
intended to broaden the avenues for judicial review of agency
action by eliminating the defense of sovereign immunity in cases
. . . .  [that] sought declaratory and injunctive relief . . .
.").

either approve or deny the request.  Doc. No. 1 (quoting 5 U.S.C. § 706(1)).  As the United States correctly notes, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that <u>it is required to take</u>."  Doc. No. 8 (quoting <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004)).  The Commissioner has failed to identify, and I am not aware of, any authority that obliges the United States to respond to waiver requests. It has no duty to do so now merely because it has granted such requests in the past.  <u>Cf.</u> <u>Ruthardt</u>, 164 F. Supp. 2d at 247 n.30 (denying an identical § 706(1) claim as moot).  The complaint's second count thus fails to state a claim upon which relief may be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).

## IV.  CONCLUSION

For the foregoing reasons I deny the United States' motion to dismiss, Doc. No. 8, with respect to Count I of the complaint and grant it with respect to Count II.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

July 21, 2014

25

```
cc:   J. David Leslie, Esq.
      Eric A. Smith, Esq.
      J. Christopher Marshall, Esq.
      Frances M. McLaughlin, Esq.
```